Maurice SPENCER, Plaintiff,

v.

TOWN OF CHAPEL HILL; Town of Chapel Hill Police Department; Greg Jarvies, in his individual capacity and in his official capacity as Interim Chief of Police for the Town of Chapel Hill; R. Pendergraph, in his individual capacity and in his official capacity as Interim Chief of Police for the Town of Chapel Hill; Officer C. Pardo, in his individual capacity and in his official capacity as a Police Officer for the Town of Chapel Hill; Officer R. Bell, in his individual capacity and in his official capacity as a Police Officer for the Town of Chapel Hill; Officer R. Matthews, in his individual capacity and in his official capacity as a Police Officer for the Town of Chapel Hill; Sergeant S. Riddle, in his individual capacity and in

his official capacity as a Police Officer for the Town of Chapel Hill; and Officer B. Coe, in his individual capacity and in his official capacity as a Police Officer for the Town of Chapel Hill, Defendants.

No. 1:03CV00351.

United States District Court, M.D. North Carolina.

Oct. 28, 2003.

James D. Williams, Jr., Law Offices of James D. Williams, Jr., Durham, NC, Bryan Edward Wardell, The Banks Law Firm, P.A., Research Triangle Park, NC, for Plaintiff.

Dan M. Hartzog, Cranfill, Sumner & Hartzog, Raleigh, NC, for Defendants.

1. Spencer has failed to serve a Summons and Complaint on any of the other named Defendants; consequently, all claims against those

Defendants will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5).

## MEMORANDUM OPINION

BULLOCK, District Judge.

Plaintiff Maurice Spencer ("Spencer") filed this civil rights action in state court against Defendant Town of Chapel Hill, North Carolina, and numerous Chapel Hill police officers seeking damages sustained as a result of a "high risk vehicle stop" that occurred on February 27, 2000. Spencer has asserted various causes of action: federal constitutional violations pursuant to 42 U.S.C. § 1983, state constitutional violations under the North Carolina Constitution, assault, battery, false imprisonment, civil conspiracy, and negligent and intentional infliction of emotional distress. Defendants timely removed this action pursuant to 28 U.S.C. § 1331 and § 1441 and now move to dismiss Spencer's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the court will dismiss all of Spencer's claims except the civil conspiracy claim as to Defendants Town of Chapel Hill, Jarvies, Riddle, and Matthews.[1] This claim will be remanded to state court for adjudication.

## FACTS

On February 27, 2000, Chapel Hill police officers stopped Spencer's vehicle while he was driving along West Franklin Street. With weapons drawn, numerous officers ordered Spencer out of his car, searched him, and handcuffed him. The officers also conducted a frisk for weapons inside Spencer's vehicle.

The officers were acting pursuant to a tip that a black male carrying a gun was acting suspiciously in a local restaurant. Although Spencer recently had left a restaurant on Franklin Street without order-

ing any food or drink, he did not engage in criminal conduct while inside and was armed with only a cellular phone clipped to his belt. Because the police search failed to unearth any evidence of wrongdoing, the officers released Spencer. Though he sustained no physical injury, Spencer alleges that he suffered severe emotional distress and humiliation as a result of the "high risk vehicle stop" conducted by the Chapel Hill police officers. Spencer was diagnosed in November 2001 with Post Traumatic Stress Disorder.

On February 26, 2003, Spencer sought and was granted an "Order Extending Time to File Complaint" under Rule 3 of the North Carolina Rules of Civil Procedure. However, he did not obtain at that time the corresponding "Civil Summons to be Served with Order Extending Time to File Complaint" which accompanies the application and order. Spencer timely filed his complaint in accordance with the extension, but he did not obtain the "Civil Summons to be Served with Order Extending Time to File Complaint" until March 3, 2003, after the statute of limitations had expired.

## DISCUSSION

### I. Standard of Review

A motion to dismiss for failure to state a claim upon which relief may be granted made pursuant to Federal Rule of Civil Procedure 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). The function of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint and not the facts that support it. *Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles County Comm'rs,* 882 F.2d 870, 872 (4th Cir.1989) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

### II. Statute of Limitations

■ Defendants allege that Spencer's claims should be dismissed because they are time-barred. Both parties agree that Spencer's state law claims are subject to a three-year statute of limitations. *See* N.C. Gen.Stat. § 1–52. Spencer's Section 1983 claim is also subject to a three-year limitations period. *See Wilson v. Garcia,* 471 U.S. 261, 280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (explaining that the statute of limitations for Section 1983 actions is the state limitations period for personal injury actions); *Nat'l Adver. Co. v. City of Raleigh,* 947 F.2d 1158, 1162 (4th Cir.1991) (concluding that the three-year period established in N.C. Gen.Stat. § 1–52(5) is the statutory period for Section 1983 claims). Consequently, the applicable statute of limitations in this case runs three years from the date of the "high risk vehicle stop," which occurred on February 27, 2000.

■ Defendants contend that Spencer failed to timely commence this action under Rule 3 of the North Carolina Rules of Civil Procedure. Rule 3 allows a plaintiff to choose from two possible methods of initiating suit. A plaintiff may bring an

action by filing a complaint with the court before the statute of limitations expires. *See* N.C. Gen.Stat. § 1A–1, Rule 3(a). In the alternative, a plaintiff may bring an action

> by the issuance of a summons when (1) A person makes application to the court stating the nature and purpose of his action and requesting permission to file his complaint within 20 days and (2) The court makes an order stating the nature and purpose of the action and granting the requested permission.

*Id.* Spencer chose the second method to initiate his lawsuit, applying for a 20–day time extension on his filing deadline. Both parties agree that Spencer filed his application before the statutory period had run. However, Defendants maintain that because Spencer did not obtain the Rule 3 summons prior to the expiration of the three-year limitations period, Spencer's claims are untimely.

█ North Carolina courts repeatedly have ruled that the issuance of a Rule 3 summons is the act which commences an action when a plaintiff seeks a time extension. Merely filing an application for an extension of time is insufficient; a plaintiff must have a summons issued within the relevant statutory period to sustain his claims. *See, e.g., Sink v. Easter,* 284 N.C. 555, 558, 202 S.E.2d 138, 140 (1974) (concluding that plaintiff's state law suit was properly initiated under "the procedure which permits an action to be commenced by the issuance of a summons"); *Beall v. Beall,* 156 N.C.App. 542, 577 S.E.2d 356 (2003) (affirming dismissal of plaintiff's claims because prior to the expiration of the statute of limitations plaintiff did not have a Rule 3 summons issued along with her application for time extension); *Telesca v. SAS Inst., Inc.,* 133 N.C.App. 653, 516 S.E.2d 397 (1999) (affirming dismissal of plaintiff's claims based on failure to

have a Rule 3 summons issued before the limitations period ran); *Collins v. Edwards,* 54 N.C.App. 180, 282 S.E.2d 559 (1981) (affirming dismissal of claims on statute of limitations grounds because plaintiff applying for time extension never issued a summons to commence the case).

In this case, Spencer filed a timely "Application and Order Extending Time to File Complaint" in accordance with Rule 3 on February 26, 2003. However, Spencer's "Civil Summons to be Served with Order Extending Time to File Complaint" was not issued until March 3, 2003, after the statutory period had expired. Thus, because Spencer failed to follow the procedure established in Rule 3, his claims are time-barred.

Spencer concedes that his assault, battery, and false imprisonment claims are untimely. In addition, he makes no attempt to save his claims under the North Carolina Constitution. However, he asserts that his claims of emotional distress, constitutional violations under Section 1983, and civil conspiracy remain viable despite the expiration of the statute of limitations. Each of Spencer's arguments is addressed in turn.

### III. Emotional Distress Claims

█ Under North Carolina law, "[b]ecause severe emotional distress is an essential element of both negligent and intentional emotional distress claims … the three-year period of time for these claims does not begin to run … until the 'conduct of the defendant causes extreme emotional distress.'" *Russell v. Adams,* 125 N.C.App. 637, 640–41, 482 S.E.2d 30, 33 (1997) (quoting *Bryant v. Thalhimer Bros., Inc.,* 113 N.C.App. 1, 12, 437 S.E.2d 519, 525 (1993)). Emotional distress claims "do not accrue until the plaintiff 'becomes aware or should reasonably have become aware of the existence of the injury.'" *Id.*

(quoting *Pembee Mfg. Corp. v. Cape Fear Constr. Co.,* 313 N.C. 488, 493, 329 S.E.2d 350, 354 (1985)). Spencer alleges that as a result of the "high risk vehicle stop," he has suffered severe emotional distress, manifested in symptoms such as nightmares, insomnia, and irregular bladder control. He sought psychological treatment in November 2001 and was diagnosed with Post Traumatic Stress Disorder. Citing these facts, Spencer posits that he did not become aware of his emotional distress until some time after the "high risk vehicle stop."

However, Spencer's complaint tells a different story. Nowhere in his pleading does Spencer state that his symptoms of emotional distress began weeks after the police stopped his vehicle. Instead, the complaint alleges that:

> During this entire process, the Plaintiff was suffering from extreme shock, apprehension, and terror, having done nothing wrong, and finding him self [sic] on the receiving end of a 12 gauge shotgun. The experience was surreal and frightening.... When the incident concluded, the Plaintiff gathered his belongings and sat in his automobile weeping. He was visibly shaken and unable to understand how he could have been subjected to this ....

(Pl.'s Compl. at ¶ 19, 21.) These allegations, made at a time in which Spencer believed he had timely filed, demonstrate that Spencer's encounter with the police caused him extreme emotional distress immediately after it occurred.

Despite these facts, Spencer argues that the diagnosis of severe emotional distress is the triggering event for statute of limitations purposes, citing *Soderlund v. Kuch,* 143 N.C.App. 361, 546 S.E.2d 632 (2001), as authority. Unfortunately, *Soderlund* does little to save Spencer's claims. In *Soderlund,* plaintiff filed his claims for emotional distress within three years of being diagnosed with Post Traumatic Stress Disorder. However, the North Carolina Court of Appeals affirmed dismissal of the case, reasoning that, "While it may be true that until diagnosis, plaintiff was not aware that he suffered from [Post Traumatic Stress Disorder] by that name, plaintiff's admissions show that he did know for some years ... that he was suffering from some sort of emotional distress." *Soderlund,* 143 N.C.App. at 368–69, 546 S.E.2d at 637. Like the *Soderlund* plaintiff, Spencer knew that he suffered from some sort of emotional distress long before he was diagnosed with Post Traumatic Stress Disorder. The fact that Spencer waited until November 2001 to seek treatment and obtain a diagnosis does not prolong his limitations period. Consequently, Spencer's intentional and negligent infliction of emotional distress claims are untimely.

## IV. Constitutional Claims

### A. Unreasonable Search and Seizure Claims

Spencer alleges that the Chapel Hill police officers violated his Fourth and Fourteenth Amendment rights during the "high risk vehicle stop" and that the Town of Chapel Hill condoned the officers' behavior. Although Spencer failed to file his lawsuit within the statutory period, he contends that his unreasonable search and seizure claims remain viable because they constitute ongoing, continuing violations. The continuing violation theory may permit a plaintiff to litigate issues that otherwise would be untimely. *See Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994) ("Where a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period."). A court can determine whether a continuing wrong

has occurred by examining the policies of the relevant statute of limitations as well as the nature of the defendant's conduct and the harm alleged. *See Cooper v. United States*, 442 F.2d 908, 912 (7th Cir.1971). Using the two-part analysis outlined in *Cooper*, the allegations in Spencer's complaint are not sufficient to demonstrate a continuing violation.

Firstly, Spencer alleges only one instance in which defendants' conduct caused constitutional injury—the "high risk vehicle stop." However, a continuing violation is one in which "the challenged action must be repeated within the statute of limitations period." *Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1167 (4th Cir.1991); *see also Perez v. Laredo Jr. Coll.*, 706 F.2d 731, 733 (5th Cir.1983) (noting that if the violation "does not occur at a single moment but in a series of separate acts and if the same alleged violation was committed at the time of each act, then the limitations period begins anew"). Also, " 'a continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation.' " *Nat'l Adver.*, 947 F.2d at 1166 (quoting *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir.1981)).

Because Spencer does not contend that the Chapel Hill police officers committed continual unlawful acts during the statutory period, he cannot sustain his constitutional claims on the basis of a continuing violation. *See Ocean Acres Ltd. v. Dare County Bd. of Health*, 707 F.2d 103, 106 (4th Cir.1983) (refusing to apply the continuing violation theory to toll the statute of limitations because plaintiff's allegations focused on "the initial acts taken by defendants, not on a continuing course of conduct"). Furthermore, the Town of Chapel Hill's alleged condonation of the participating officers' conduct does not constitute an independently compensable injury; if anything, it may be characterized as an "ill effect of an original violation" that is insuf-

ficient to toll the statute of limitations on Spencer's constitutional claims. *See Nat'l Adver.*, 947 F.2d at 1167 (affirming dismissal of Section 1983 action because plaintiff's claim against city for imposing an allegedly unconstitutional property restriction was time-barred and "no city action since then has added to [plaintiff's] alleged injury").

Secondly, consistent with the fundamental policies underlying the statute of limitations, the continuing violation theory "should not provide a means of relieving plaintiff from its duty of reasonable diligence in pursuing its claims." *Ocean Acres*, 707 F.2d at 107. In this case, Spencer knew the statute of limitations was running and sought a time extension, but failed to follow the procedure mandated by Rule 3 to preserve his claims. Because Spencer cannot show that the Defendants' conduct constituted a continuing violation, his unreasonable search and seizure claims are time-barred.

### B. Federal Civil Conspiracy Claim

Spencer also asserts that the Defendants conspired to cover up the details of the "high risk vehicle stop" by altering internal documents about the incident. In his complaint, Spencer never specifically identifies this alleged conspiracy as a constitutional violation, saying only that these actions violate North Carolina public policy. However, in his brief opposing Defendants' motion to dismiss, Spencer states that "Defendants' constitutional violations permeate several of Plaintiff's causes of action," including the allegations of civil conspiracy. (Pl.'s Br. Opp'n Def.'s Mot. Dismiss at 11.) Consequently, the court will assume that Spencer has intended to state a federal cause of action for civil conspiracy under Section 1983 in addition to his state law civil conspiracy claim. *See Ryland v. Shapiro*, 708 F.2d 967, 974 (5th Cir.1983) ("An action for conspiracy may

be maintained under section 1983."). Spencer argues that his conspiracy claims are not subject to the three-year statute of limitations because he discovered the conspiracy several months after his encounter with police. Regardless of whether Spencer is correct, he has failed to state a claim for civil conspiracy under Section 1983.

A plaintiff may have a federal cause of action for a coverup or conspiracy that prevents him from obtaining "meaningful access to the courts," a fundamental right under the Constitution. *See, e.g., Chambers v. Baltimore & Ohio R.R. Co.,* 207 U.S. 142, 148, 28 S.Ct. 34, 52 L.Ed. 143 (1907); *Delew v. Wagner,* 143 F.3d 1219, 1222 (9th Cir.1998); *Swekel v. City of River Rouge,* 119 F.3d 1259, 1262 (6th Cir. 1997); *Wilson v. Meeks,* 52 F.3d 1547, 1556–58 (10th Cir.1995), *abrogated on other grounds by Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Foster v. City of Lake Jackson,* 28 F.3d 425, 429 (5th Cir.1994); *Bell v. City of Milwaukee,* 746 F.2d 1205, 1261 (7th Cir.1984). However, the right of access to the courts is violated only when the defendant's actions inhibit the plaintiff from filing a case or obtaining legal redress, not merely when the defendant's actions interfere with potential sources of evidence. *See Wilson,* 52 F.3d at 1558 (reversing district court's refusal to grant summary judgment for defendants on plaintiff's conspiracy claim involving lost photographs and an altered audio tape because plaintiff was not deprived of her access to the courts); *Foster,* 28 F.3d at 430 (noting that the right of access "encompasse[s] a right to file an action, but not the right to proceed free of discovery abuses after filing"); *Mick v. Brewer,* 923 F.Supp. 181, 183–84 (D.Kan.1996) (denying plaintiff's motion to amend complaint to add a conspiracy claim because the defendants' alleged concealment did not deny plaintiff her right of access to the courts). Moreover, if the plaintiff has firsthand knowledge of the facts sufficient to state a claim, he cannot allege that the defendant's coverup has inhibited his access to the courts. *See Paige v. Police Dep't of City of Schenectady,* 264 F.3d 197, 200 (2d Cir.2001) (affirming summary judgment for defendants on federal civil conspiracy claims because defendants' concealment "did not deprive appellant of the information that she needed to bring a § 1983 suit" and "had no significant effect upon [plaintiff's] ability to bring her cause of action"); *Thompson v. Boggs,* 33 F.3d 847, 852–53 (7th Cir.1994) (affirming dismissal of plaintiff's claim that a police coverup deprived him of access to the courts because plaintiff had firsthand knowledge of the facts which would enable him promptly to file a lawsuit).

These cases demonstrate that Spencer cannot state a claim for civil conspiracy under Section 1983. Nowhere does Spencer assert that the alleged police coverup kept him from filing his complaint before the statute of limitations expired. Instead, as the alleged victim of the stop, Spencer had firsthand knowledge of the purported misconduct immediately after the incident occurred. In addition, the Defendants' conduct did not render Spencer's legal remedies ineffective or prevent him from taking advantage of them. On the contrary, the action that inhibited Spencer's pursuit of redress was his own failure to file within the statutory period. Therefore, Spencer cannot state a valid claim for civil conspiracy under Section 1983.

## V. North Carolina Civil Conspiracy Claim

Spencer also alleges that the Defendants engaged in a civil conspiracy in violation of North Carolina public policy. Whether Spencer's allegations are sufficient to make such a claim is a difficult issue of state law that is best determined by the state court. As all federal claims in this case have been dismissed, the court

will yield jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). *See* 28 U.S.C. § 1367(c)(3); *see also Hinson v. Norwest Fin. S.C., Inc.,* 239 F.3d 611, 617 (4th Cir.2001) (explaining that under Section 1367(c)(3) a district court may decline to exercise supplemental jurisdiction over state law claims if the court has dismissed all other claims over which it has original jurisdiction). Therefore, Spencer's state law civil conspiracy claim will be remanded to the General Court of Justice, Superior Court Division, Durham County, North Carolina, for further disposition.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for failure to state a claim will be granted as to all claims except the North Carolina civil conspiracy claim, which will be remanded to state court for further adjudication.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.